IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ROBERT CASEY,**<br><br>   **Plaintiff,**<br><br> **vs.**<br><br>**1400 NORTHSIDE DRIVE, INC. d/b/a Swinging Richards and C.B. JONES II,**<br><br>   **Defendants.** | Civil Action No. _____ |

## COMPLAINT

Plaintiff Robert Casey, by and through the undersigned attorneys, hereby files this Complaint asserting claims against Defendants 1400 Northside Drive, Inc. and C.B. Jones II under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA") for due but unpaid minimum wages and other relief on the grounds set forth as follows:

### Introduction

1.

This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., by a former exotic dancer employed by Defendants at Swinging

Richards nightclub in Atlanta, Georgia, for violation of the FLSA's minimum wage pay requirement. Plaintiff alleges that Defendants are his employers, have paid him no wages, and that his sole form of remuneration has been tips from customers. Plaintiff additionally alleges violation of 26 U.S.C. § 7434, based on Defendants' filing of IRS Forms 1099-MISC, fraudulently misclassifying his earnings as non-employee compensation for Defendants' own benefit.

2.

Two related cases, *Henderson et al. v. 1400 Northside Drive, Inc. et al.*, 1:13-cv-03767-TWT (N.D. Ga.) and *Wilson et al. v. 1400 Northside Drive, Inc. et al.*, 1:15-cv-4453-SCJ (N.D. Ga.) are currently pending before this Court. *Henderson* is a collective action and *Wilson* was brought by three individuals. Both of those cases involve virtually identical minimum wage claims.

3.

In accordance with 26 U.S.C. § 7434(d), Plaintiff has provided a copy of this Complaint to the Internal Revenue Service.

**Parties**

4.

Plaintiff is a natural person who resides within the Northern District of Georgia.

5.

Defendant 1400 Northside Drive, Inc. is a domestic for-profit corporation with its principal place of business located at 1400 Northside Drive NW, Atlanta, GA, 30318. On information and belief Defendant 1400 is the legal owner of the Swinging Richards club. Defendant 1400 may be served with a copy of the summons and complaint by leaving a copy with its registered agent for service, Mr. Herbert Schlanger, at 230 Peachtree Road NW, Suite 1890, Atlanta, GA 30303.

6.

Defendant 1400 is subject to the personal jurisdiction of this Court.

7.

Defendant C.B. Jones II is a natural person who is the sole shareholder of 1400 Northside Drive, Inc., who holds himself out as the "owner" of Swinging Richards, and who has ultimate control over all aspects of the operation of 1400 Northside Drive, Inc.

8.

Defendant Jones resides within the Northern District of Georgia and may be served with a copy of the summons and complaint at his residence in Pickens County, Georgia.

9.

Defendant Jones is subject to the personal jurisdiction of this Court.

**Jurisdiction and Venue**

10.

The jurisdiction of this Court is proper pursuant to Article III, § 2 of the United States Constitution, 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, as this case arises under the FLSA, a federal statute which affects interstate commerce.

11.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendants regularly conduct business in this judicial district, a substantial portion of the events giving rise to the claims herein arose in this judicial district, and both Defendants reside in this judicial district.

**Enterprise Coverage Under the FLSA**

12.

Defendants own and operate a business enterprise known as Swinging Richards in Atlanta, Georgia (hereinafter "the Company").

13.

In 2011, two or more employees of the Company used or handled the following items that moved in interstate commerce that are necessary for

performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

14.

In 2012, two or more employees of the Company used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

15.

In 2013, two or more employees of the Company used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

16.

In 2014, two or more employees of the Company used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

17.

In 2015, two or more employees of the Company used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

18.

In 2016, two or more employees of the Company used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

19.

In 2011, the Company had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

20.

In 2012, the Company had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

21.

In 2013, the Company had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

22.

In 2014, the Company had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

23.

In 2015, the Company had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.

In 2016, the Company had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

In 2011, the Company had had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

26.

In 2012, the Company had had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

27.

In 2013, the Company had had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

28.

In 2014, the Company had had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

29.

In 2015, the Company had had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

30.

In 2016, the Company had had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

31.

In 2011, the Company had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

32.

In 2012, the Company had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

33.

In 2013, the Company had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

34.

In 2014, the Company had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

35.

In 2015, the Company had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

36.

In 2016, the Company had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

37.

In 2011, the Company was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

38.

In 2012, the Company was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

39.

In 2013, the Company was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

40.

In 2014, the Company was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

41.

In 2015, the Company was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

42.

In 2016, the Company was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

**Corporate Employer Under the FLSA**

43.

Swinging Richards is a nightclub club whose primary business is to provide entertainment in the form of nude and semi-nude male dancers and the sale of alcoholic beverages.

44.

Plaintiff has worked as an exotic dancer at Swinging Richards from July 11, 2011, through the present.

45.

At all relevant times, the business operations of Swinging Richards have been conducted through Defendant 1400 Northside Drive, Inc.

46.

At all relevant times, Defendant 1400 has maintained all financial accounts used in the operation of Swinging Richards, including its payroll account.

47.

At all relevant times, Defendant 1400 has paid all costs associated with the advertising, marketing, and promotion of Swinging Richards.

48.

At all relevant times, Defendant 1400 has provided all facilities used in the performance of Plaintiff's dancer work at Swinging Richards.

49.

At all relevant times, the work of dancers such as Plaintiff has been an integral part of Defendant 1400's business success.

50.

At all relevant times, Swinging Richards dancers have not been required to have any specialized skills, education, training, or knowledge.

51.

At all relevant times, Plaintiff has been an "employee" as defined in FLSA § 3(e), 29 U.S.C. § 203(e) in connection with his dancer work at Swinging Richards as a matter of economic reality.

52.

At all relevant times, Defendant 1400 has been Plaintiff's "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d) as a matter of economic reality.

**Individual Employer Under the FLSA**

53.

At all relevant times, Defendant Jones has acted directly or indirectly in the interest of Defendant 1400 in his interactions with Plaintiff, and has controlled the terms and conditions of Plaintiff's employment.

54.

At all relevant times, Defendant Jones has been the sole owner of Swinging Richards.

55.

At all relevant times, Defendant Jones has had authority and exercised control over the finances and operations of Swinging Richards.

56.

At all relevant times, Defendant Jones has exercised ultimate control over hiring and firing Swinging Richards' managerial and administrative employees.

57.

At all relevant times, Defendant Jones has had authority and control over Swinging Richards' policy of classifying dancers as "independent contractors" for tax purposes.

58.

At all relevant times, Defendant Jones has had authority over the terms of Plaintiff's working conditions, including all rules applicable to Swinging Richards' dancers.

59.

At all relevant times, Defendant Jones has had authority and control over Swinging Richards' policy of having dancers work for tips only.

60.

At all relevant times, Defendant Jones had authority and control over Swinging Richards' recordkeeping policies with respect to dancers' hours worked and monies received.

61.

At all relevant times, Defendant Jones was an "employer" of Plaintiff as defined in FLSA § 3(d), 29 U.S.C. § 203(d) inasmuch as he was acting directly or indirectly in the interest of Defendant 1400 in his interactions with Plaintiff.

**FLSA Minimum Wage Violation**

62.

At all relevant times, Plaintiff has not been subject to any exemption from the minimum wage pay requirements of the FLSA.

63.

At all relevant times, Defendants paid Plaintiff no wages whatsoever.

64.

At all relevant times, Plaintiff's only source of remuneration for his work at Swinging Richards was the receipt of tips from customers.

65.

At all relevant times, Defendants failed to keep and maintain accurate records of the number of hours worked by Plaintiff.

66.

At all relevant times, Defendants required Plaintiff to pay specific fees, such as a "house fee," "DJ fee," and "t-shirt fee," in order to work on any given shift.

67.

At all relevant times, the specific amounts that Defendants required Plaintiff and to pay has varied, but typically totaled at least $100 per shift.

68.

The fees described herein constitute unlawful "kickbacks" to the employer within the meaning of the Fair Labor Standards Act and relevant Department of Labor regulations.

**Retaliation**

69.

On March 13, 2014, Plaintiff filed a Consent Form pursuant to 29 U.S.C. § 216 in the *Henderson* action, electing to become an "opt-in" plaintiff. [Henderson Dkt. 37]

70.

In May 2014, the manager of Swinging Richards found Plaintiff's name on a list of opt-in Plaintiffs in the *Henderson* action on a list provided to him by Defendant Jones, and told Plaintiff that he would not be permitted to work at Swinging Richards unless he withdrew his Consent Form in the *Henderson* action.

71.

Upon information and belief, the Swinging Richards manager acted on the instruction of Defendant Jones in conditioning Plaintiff's employment at Swinging Richards upon his withdrawal of his Consent Form.

72.

Because Defendants would not permit him to work at Swinging Richards otherwise, Plaintiff filed a Withdrawal Form withdrawing his consent to join the *Henderson* action on May 22, 2014. [Henderson Dkt. 52]

73.

As a result of Defendants requiring Plaintiff to choose between waiving his FLSA rights or keeping his job, Plaintiff has suffered lost income and emotional distress.

**Willfulness**

74.

At all relevant times, Defendants have not relied on any formal opinion of the Department of Labor indicating that their dancer-compensation policies and practices are permitted under the FLSA.

75.

At all relevant times, Defendants have not relied on any advice—including but not limited to legal advice— indicating that their dancer-compensation policies and practices are permitted under the FLSA.

76.

In 1993, the U.S. Department of Labor issued a letter ruling to attorney Scott Schulten who was representing a group of adult entertainment club owners (including Defendant Jones and Defendant 1400 Northside Drive, Inc.) holding that Defendant 1400's (then female) dancers were employees entitled to payment of minimum wages and not independent contractors.

77.

At all relevant times, Defendants have failed to "post and keep posted a notice explaining the [FLSA] . . . in [a] conspicuous place[]," as required by 29 CFR § 516.4.

78.

At all relevant times, Defendants have willfully refused to correct their FLSA non-compliance, even after being sued for identical FLSA violations in 2013 and again in 2015.

79.

Defendants' FLSA minimum wage violations were willful within the meaning of 29 U.S.C. § 215.

**Filing of Fraudulent Information Returns**

80.

In 2012, Defendant 1400 filed an IRS Form 1099-MISC with the Internal Revenue Service categorizing monies earned by Plaintiff in calendar year 2011 as nonemployee compensation.

81.

In 2013, Defendant 1400 filed an IRS Form 1099-MISC with the Internal Revenue Service categorizing monies earned by Plaintiff in calendar year 2012 as nonemployee compensation.

82.

In 2014, Defendant 1400 filed an IRS Form 1099-MISC with the Internal Revenue Service categorizing monies earned by Plaintiff in calendar year 2013 as nonemployee compensation.

83.

In 2015, Defendant 1400 filed an IRS Form 1099-MISC with the Internal Revenue Service categorizing monies earned by Plaintiff in calendar year 2014 as nonemployee compensation.

84.

In 2016, Defendant 1400 filed an IRS Form 1099-MISC with the Internal Revenue Service categorizing monies earned by Plaintiff in calendar year 2015 as nonemployee compensation.

85.

Defendant 1400's characterization of Plaintiff's earnings as nonemployee compensation—rather than employee compensation in an IRS Form W-2—was false, because Plaintiff was an employee of Defendant 1400 and not an independent contractor.

86.

Despite having previously been sued for misclassification of Swinging Richards dancers as independent contractors and violation of 26 U.S.C. § 7434, Defendant 1400 has never filed an IRS Form SS-8 (Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding) with the Internal Revenue Service, or made any similar attempt to obtain a determination of the correct classification of Swinging Richards dancers for tax purposes.

87.

In each relevant year, Defendant 1400 fraudulently misclassified Plaintiff as an independent contractor and filed a fraudulent IRS Forms 1099 with respect to his earnings for the purpose of Defendant 1400's own enrichment, which included but was not limited to avoiding payment of minimum wages, avoiding payment of state unemployment taxes, avoiding state and federal payroll tax contributions, avoiding state workers' compensation taxes, and avoiding liability for any tortious acts of committed by Swinging Richards dancers.

88.

Defendant Jones caused the above-referenced IRS Forms 1099 to be filed with the Internal Revenue Service in each relevant year within the meaning of 26 U.S.C. § 7434 by authorizing Swinging Richards' accountant and/or bookkeep to file them

and by establishing Swinging Richard's policy of treating dancers as independent

contractors for tax purposes.

## CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF 29 U.S.C. §§ 206 AND 215
### (Minimum Wage Violations)

89.

Paragraphs 1 through 86 are incorporated herein by this reference.

90.

At all relevant times, Plaintiff was entitled to be paid $7.25 for each and every

hour worked for Defendants in a given workweek.

91.

Defendants regularly failed to pay Plaintiff the equivalent of $7.25 per hour free

and clear for each hour worked for Defendants in any and all given workweeks.

92.

Defendants' failure to compensate Plaintiff the equivalent of $7.25 per hour for

each hour worked for Defendants in any and all given workweeks is a violation of

§§ 206 and 215 of the Fair Labor Standards Act of 1938, as amended.

93.

Defendants' violation of §§ 206 and 215 of the Fair Labor Standards Act was willful. Said violation gives rise to a claim for relief under the FLSA for unpaid minimum wages for three years prior to the filing of this Complaint, through the date of judgment in this action, liquidated damages in an amount equal to the unpaid compensation, declaratory relief, and reasonable attorneys' fees and expenses of litigation, pursuant to 29 U.S.C. § 216.

94.

The FLSA's three-year statute of limitations for willful violations should be equitably tolled as of March 13, 2014, the date that Plaintiff filed his Consent Form in the *Henderson* action.

## COUNT TWO

## VIOLATION OF 29 U.S.C. § 215
**(Retaliation)**

95.

Paragraphs 1 through 86 are incorporated herein by this reference.

96.

By filing a Consent Form in the *Henderson* action, Plaintiff undertook an activity protected under 29 U.S.C. § 215(a)(3).

97.

Defendants discriminated against Plaintiff in connection with his employment at Swinging Richards by conditioning his employment on his withdrawal of his Consent Form in the *Henderson* action.

98.

Defendants discriminated against Plaintiff in connection with his employment at Swinging Richards *because* he asserted his rights under the FLSA.

99.

As a result of Defendants' discriminatory acts, Plaintiff is entitled to recover his lost income and emotional distress that resulted from the retaliation.

100.

As a result of Defendants' discriminatory acts, Plaintiff is entitled to all unpaid wages and liquidated damages that he would have recovered in the *Henderson* action had he not withdrawn his Consent Form.

101.

In the alternative, the FLSA's three-year statute of limitations for willful violations should be equitably tolled as of March 13, 2014, the date that Plaintiff filed his Consent Form in the *Henderson* action.

102.

In the alternative, Defendants should be equitably estopped from asserting the affirmative defense of the FLSA's statute of limitations.

## COUNT THREE

## VIOLATION OF 26 U.S.C. § 7434
**(Willful Filing of Fraudulent Information Returns)**

103.

Paragraphs 1 through 86 are incorporated herein by this reference.

104.

At all relevant times, Plaintiff has been an employee of Defendants.

105.

At all relevant times, Defendants have classified Plaintiff as an independent contractor for tax purposes, rather than as an employee.

106.

At all times material hereto, Defendants fraudulently misclassified Plaintiff as an independent contractor.

107.

In 2012, 2013, 2014, 2015, and 2016, Defendants willfully caused fraudulent IRS Forms 1099-MISC to be filed with the Internal Revenue Service with respect to Plaintiff's earnings.

108.

The IRS Forms 1099-MISC that Defendants caused to be filed were fraudulent because they intentionally and recklessly misrepresented Plaintiff's earnings as nonemployee compensation.

109.

Defendants fraudulently misclassified Plaintiff's income as nonemployee compensation for their own enrichment.

110.

Defendants' willful filing of fraudulent information returns was in violations of 26 U.S.C. § 7434.

111.

Plaintiff is entitled to all relief afforded by 26 U.S.C. § 7434, including but not limited to his actual damages, a minimum of $5,000 per fraudulent filing, and attorney's fees and costs of litigation.

WHEREFORE, Plaintiff request that this Court:

(a)    Take jurisdiction of this matter;

(b)    Issue an Order holding each of the Defendants to be an "employer" as that term is defined under the FLSA;

(c)     Grant a trial by jury as to all matters properly triable to a jury;

(d)     Issue an Order declaring that Plaintiff is an employee of Defendants and is covered by the provisions of the FLSA, and that Defendants have failed to comply with the minimum wage requirements of the FLSA;

(e)     Issue an Order declaring that Defendants have retaliated against Plaintiff in violation of the FLSA's anti-discrimination provision;

(f)     Issue an Order equitably tolling the FLSA's statute of limitations as of March 13, 2014;

(h)     Issue an Order equitably estopping Defendants from relying on the affirmative defense of the FLSA's statute of limitations;

(i)     Award Plaintiff proper payment of minimum wages for each hour worked, and liquidated damages equaling 100% of that amount, as required by the FLSA;

(j)     Award Plaintiff a return of all kickbacks paid to Defendants, and liquidated damages equaling 100% of that amount, as required by the FLSA;

(k)     Award Plaintiff compensatory damages for his lost wages and emotional distress;

(l)     Award Plaintiff prejudgment interest on all amounts owed;

(m)   Award Plaintiff nominal damages;

(n)   Award Plaintiff their reasonable attorney's fees and costs of litigation pursuant to 29 U.S.C. § 216(b); and

(o)   Issue an Order holding that Defendants violated 26 U.S.C. § 7434 by willfully filing fraudulent tax information returns with respect to Plaintiff's earnings during each relevant year;

(p)   Award Plaintiff no less than $5,000 for each fraudulent tax information return filed with respect Plaintiff's earnings during each relevant year;

(q)   Award Plaintiff his reasonable attorney's fees and costs of litigation pursuant to 26 U.S.C. § 7434; and

(r)   Award any and such other further relief this Court deems just, equitable and proper.

Respectfully submitted this 7th day of December 2016.

DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC

*/s/ Mitchell D. Benjamin*
Mitchell D. Benjamin
Georgia Bar No. 049888

3100 Centennial Tower
101 Marietta Street, NW
Atlanta, Georgia 30303
(404) 979-3150 Telephone
(404) 979-3170 Facsimile
benjamin@dcbflegal.com
matthew.herrington@dcbflegal.com

*/s/ Matthew W. Herrington*
Matthew W. Herrington
Georgia Bar No. 275411

Attorneys for Plaintiff

28